# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Criminal No. 20-072-MSM** |
| v. | ) | |
| | ) | |
| DAVID BUTZIGER | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant David Butziger ("Butziger") is due to be sentenced on December 20, 2021, on one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Butziger was among the first in the country (and the first one charged) who decided to take advantage of the national crisis brought about by the COVID-19 pandemic by devising a scheme to defraud the Paycheck Protection Program ("PPP"). Along with his co-conspirator David Staveley ("Staveley"), Butziger brazenly sought to defraud the PPP by conspiring to submit fraudulent applications for $543,959 in forgivable loans for restaurants that were not in business and for a technology company Butziger falsely claimed had 7 employees.

Due to the seriousness of the offense, the need to protect the public and to afford adequate deterrence, the United States recommends that the Court impose a sentence of 21 months of imprisonment, which the Government believes will fall at the mid-point of the applicable Guideline range.

Seriousness of the Offense

The first sentencing factor the Court must consider under 18 U.S.C. § 3553 is the seriousness of the offense. There can be no question that the offense committed by Butziger was extremely serious. With the country reeling from the COVID-19 pandemic and the shutdown of

businesses nationwide, Butziger simply saw an opportunity to benefit himself by committing more fraud.  On April 6, 2020, at the very beginning on the pandemic, Butziger assisted Staveley in applying for PPP loans for three restaurants that had no employees at all (one of which Staveley had no ownership interest at all). Butziger played an essential role in these fraudulent applications as it was he who created the bogus tax documents that Staveley submitted in support of the PPP applications.

On the same date that Butziger assisted Staveley in submitting fraudulent loans for the three restaurants, Butziger submitted a loan application under the PPP to BankNewport in his own name on behalf of an unincorporated entity that he called Dock Wireless. The loan application was in the amount of $105,381.50 and fraudulently represented that Dock Wireless had 7 employees and an average monthly payroll of $42,152.60. In reality, Dock Wireless had no employees and no wages were ever paid by Dock Wireless.

In total, Butziger and Staveley submitted four fraudulent PPP loans applications totaling $543,959. While the applications were pending, a concerned citizen aware of their fraudulent nature brought them to the attention of law enforcement which ultimately led to their denial by BankNewport. Though Butziger was ultimately thwarted in his attempt to obtain PPP funds, there can be no question that his intention, at the very beginning of the pandemic, was to exploit the national crisis for his own advantage. The seriousness of the offense obviously includes the large amount of attempted fraud perpetrated by this defendant. In this case, however, there is an even greater harm. The money that defendant attempted to obtain by fraud was meant for legitimate small businesses struggling to survive after being forced to shut down due to the pandemic. It was meant to pay actual employees so that these employees could keep receiving some income when they were unable to work. This money set aside by the Government in the

PPP program was not endless. In fact, many businesses struggled to obtain funding under this program due to the intense need created by the closure of much of the economy. None of this mattered to this defendant. He saw the economic emergency created by the pandemic simply as an opportunity to make himself rich by taking for himself what was meant for those in need. The seriousness of the offense committed by Butziger calls for a significant sentence.

<u>Need to Afford Adequate Deterrence</u>

As with most federal criminal cases, there exists a strong need for deterrence. White-collar defendants who commit fraud are by and large rational actors who weigh the pros and cons of their criminal conduct before undertaking it. Giving a significant sentence to a defendant like Butziger who sought to exploit a national emergency for his own benefit would send a powerful message that significant punishment is to follow for anyone who attempts to capitalize on national emergencies by committing fraud. It would also serve to deter this defendant from engaging in any further financial crimes.

<u>Personal Characteristics of the Defendant</u>

A review of the Presentence Report reveals a defendant who was raised in a loving home, has close family relations, is intelligent and gainfully employed. In short, he has had every advantage. There is nothing in his background that in any way excuses or mitigates his criminal conduct. He was motivated by nothing other than greed, pure and simple.

The Government also has reservations about whether this defendant truly accepts his own culpability for his conduct. While he has admitted his guilt and should be credited with acceptance of responsibility points under the Guidelines, defendant still appears to shift most of

the blame for this offense onto his co-conspirator. He informed the Probation Department that "he is not happy about his legal situation and feels foolish because he was duped by someone." (PSR ¶ 50)  Butziger made similar remarks in his previous statements to the government, in which he attempted to shift most of the blame for this offense onto Staveley. While Staveley was certainly culpable (and received a 56 month sentence), Butziger was not "duped" by Staveley into committing this fraud. Butziger created the bogus tax documents on his own volition. He then submitted a fraudulent PPP application on behalf of his own business, seeking $105,381 that would have been deposited directly into his bank account. Unless and until this defendant clearly recognizes and accepts that he made a knowing and voluntary decision to commit fraud, the risk of recidivism remains significant.

For all of the foregoing reasons, a sentence of 21 months of imprisonment is sufficient, but not greater than necessary, to punish the defendant, promote respect for the law and to afford adequate deterrence.

Respectfully submitted,

ZACHARY A. CUNHA
UNITED STATES ATTORNEY

LEE H. VILKER
Assistant U.S. Attorney

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of December 2021, I caused the within Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

/s/ Lee H. Vilker
LEE H. VILKER
Assistant U. S. Attorney,
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000, 401-709-5001 (fax)