1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF RHODE ISLAND

3

4
     * * * * * * * * * * * * * * *   C.R. NO. 20-72-MSM
5                                *
     UNITED STATES OF AMERICA    *
6                                *
        VS.                      *   SEPTEMBER 18, 2020
7                                *   10:00 A.M.
     DAVID BUTZIGER              *
8                                *
     * * * * * * * * * * * * * * *   VIA VIDEOCONFERENCE
9

10              BEFORE THE HONORABLE MARY S. McELROY,

11                        DISTRICT JUDGE

12

               (Arraignment and Change of Plea Hearing)
13

14   APPEARANCES:

15   FOR THE GOVERNMENT:  LEE VILKER, AUSA
                          U.S. Attorney's Office
16                        50 Kennedy Plaza
                          Providence, RI  02903
17
     FOR THE DEFENDANT:   JOHN L. CALCAGNI, III, ESQ.
18                        Law Office of John L. Calcagni, III
                          72 Clifford Street, Ste. 300
19                        Providence, RI  02903

20   Court Reporter:      Karen M. Wischnowsky, RPR-RMR-CRR
                          One Exchange Terrace
21                        Providence, RI  02903

22

23

24

25

1     18 SEPTEMBER 2020 -- 10:00 A.M.

2     VIA VIDEOCONFERENCE

3          THE COURT:  I apologize for starting a little

4     bit late this morning.  I had a few difficulties

5     logging on, as I at times do.  So I apologize.  But

6     we're here this morning in the criminal action of the

7     United States of America versus David Butziger, and

8     it's criminal -- it's Criminal Action 20-72.

9          Can I have counsel identify themselves for the

10    record.

11         MR. VILKER:  Yes.  Good morning, your Honor.

12    Lee Vilker for the United States.

13         MR. CALCAGNI:  Good morning.  John Calcagni on

14    behalf of David Butziger.

15         THE COURT:  And good morning, Mr. Butziger.

16         THE DEFENDANT:  Good morning.

17         THE COURT:  Have you discussed with your

18    attorney what we're doing here today?

19         THE DEFENDANT:  Yes, I have.

20         THE COURT:  Okay.  And you understand why you're

21    here?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  Okay.  I am going to proceed now to

24    the arraignment on your one-count Indictment.  Okay?

25    And that's dated August 26th, 2020.  Have you looked

1    over that with your attorney and discussed it with him?

2          THE DEFENDANT:  Yes, I have.

3          THE COURT:  Okay.  And before I tell you about

4    the charge in that Indictment, I'm going to tell you

5    about some of the rights that you have.  And they're

6    important, so if you have a question or a concern, let

7    me know; and you can speak to your attorney at any time

8    in a separate, private room if you have any questions.

9    Okay?

10          THE DEFENDANT:  Okay.

11          THE COURT:  All right.  First, you have the

12    right to remain silent, and that means that you're not

13    required to make any statements or say anything to

14    anyone in this matter.  Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  But if you choose to make a

17    statement or you start to make a statement, you also

18    have the right to stop at any time.

19          THE DEFENDANT:  Okay.

20          THE COURT:  And if you do speak, anything that

21    you say could be used against you.  Do you understand

22    that right to remain silent as I've explained it to

23    you?

24          THE DEFENDANT:  I do.

25          THE COURT:  All right.  You also have the right

1    to counsel at every step of the proceedings.  You have

2    the right to hire counsel of your own choice or, if you

3    cannot afford counsel, you may apply to the Court and

4    the Court will appoint counsel for you.  Do you

5    understand that right?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Is Mr. Calcagni Court appointed in

8    this matter?

9              THE DEFENDANT:  No, he's not.

10             THE COURT:  Okay.  So you've retained

11   Mr. Calcagni.

12             THE DEFENDANT:  I have.

13             THE COURT:  Okay.  And in speaking to

14   Mr. Calcagni, have you discussed the fact that you're

15   appearing here remotely as opposed to in person?

16             THE DEFENDANT:  Yes, he's explained it to me.

17             THE COURT:  Okay.  And do you understand that

18   this is -- obviously, you know, we're in the middle of

19   a pandemic.  I think unless you've lived under a rock,

20   you know that; but the Court is doing things in a way

21   that it wouldn't necessarily do them under, you know,

22   normal conditions.

23             And some of the things we're doing is we're

24   doing hearings like this remotely; but you have the

25   right to be present in court, in person, to be

1    arraigned and enter a plea.  Do you understand that?

2              THE DEFENDANT:  I do.

3              THE COURT:  And have you discussed that with

4    Mr. Calcagni?

5              THE DEFENDANT:  Yes, I have.

6              THE COURT:  And under the Court's emergency

7    orders, we're allowing people to waive that right to be

8    present to protect you, to protect the court staff, to

9    protect the attorneys and the public.  Do you

10   understand that?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  And have you discussed with

13   Mr. Calcagni your right to appear in person, and have

14   you decided to give that up or waive it and appear here

15   via Zoom?

16             THE DEFENDANT:  Yes, that is correct.

17             THE COURT:  Okay.  Mr. Calcagni, any concern or

18   objection to him appearing and handling this proceeding

19   remotely?

20             MR. CALCAGNI:  No.

21             THE COURT:  Thank you.  Okay.  So Mr. Calcagni

22   is here to give you advice at every critical stage.

23   Okay?  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And you also have the right to have

1   him present any time a representative of the Government

2   is questioning you.  To exercise that right, you simply

3   say, "I want my lawyer," or "my attorney."  Do you

4   understand that?

5        THE DEFENDANT:  I do.

6        THE COURT:  So you understand your right to

7   counsel?

8        THE DEFENDANT:  Uh-huh.

9        THE COURT:  Okay.  So you're here because the

10  United States has brought an Information against you

11  charging you with conspiracy to commit bank fraud.  Is

12  that correct?

13       THE DEFENDANT:  Yes.

14       THE COURT:  And that's how you understand that;

15  right?

16       THE DEFENDANT:  Yeah.

17       THE COURT:  Okay.  Mr. Calcagni, have you and

18  your client each received a copy of the Information?

19       MR. CALCAGNI:  Yes, we have.

20       THE COURT:  Okay.  And have you reviewed the

21  charges and the elements of those charges with your

22  client?

23       MR. CALCAGNI:  Yes, I have, your Honor.

24       THE COURT:  Okay.  And do you believe that he

25  understands the nature of those charges?

1          MR. CALCAGNI:  Yes.

2          THE COURT:  Okay.  Mr. Butziger, do you have any

3     questions about those charges?

4          THE DEFENDANT:  No, I do not, your Honor.

5          THE COURT:  Okay.  And you understand that the

6     Government is charging you with one count of conspiracy

7     to commit bank fraud, and they're indicating that --

8     hang on -- that beginning on or about April 26th, 2020,

9     and continuing through April 27th, 2020, in the

10    District of Rhode Island and elsewhere, that you, David

11    Butziger, together with David Staveley, knowingly and

12    unlawfully combined, conspired and agreed together with

13    each other to commit bank fraud by knowingly executing

14    and attempting to execute a scheme, an artifice, to

15    defraud Bank Newport and to obtain money, funds, assets

16    and other property owned by and under the custody and

17    control of Bank Newport by false representations,

18    presentations, pretenses and promises.

19         Do you understand that?

20         MR. VILKER:  Your Honor, before that -- I think

21    the beginning day of the conspiracy is April 6th.  I

22    think your Honor may have misspoken.

23         THE COURT:  What did I say?  I apologize.

24         MR. VILKER:  I think you said April 26th, if I

25    heard you correctly.

1          THE COURT:  I apologize.  So do you understand

2     with that caveat that it's April 6th through the 27th?

3     Do you understand that that's the allegation that the

4     Government has brought against you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And do you have any questions about

7     the charge?

8          THE DEFENDANT:  No.

9          THE COURT:  Okay.  So I understand from the plea

10    agreement that you have decided to waive your right to

11    a grand jury presentation of this case; and I have a

12    copy of your signed Waiver of Indictment, which I'm

13    going to kind of hold up to the camera so that you can

14    see it.  Can you see that?

15         THE DEFENDANT:  Yes, I can.

16         THE COURT:  Okay.  Sometimes it's easier to see

17    on Zoom than it is in the big courtroom, frankly, for

18    those of us who are a little older.

19         Okay.  Has your attorney, Mr. Calcagni,

20    explained the right to Indictment by grand jury to you?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Okay.  And has he answered any

23    questions that you have?

24         THE DEFENDANT:  Yes, he has.

25         THE COURT:  Do you understand that you would, in

1    any criminal case, have the right to be indicted by a

2    grand jury, which is a group of 12 citizens who --

3    which is a group of citizens, more than 12, of whom 12

4    must find probable cause to believe a crime has been

5    committed in order for you to be indicted?  Do you

6    understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Okay.  And that if you -- if they

9    don't find that, if they find there's not enough

10   evidence or fewer than 12 find that, then there

11   wouldn't be a charge against you; but if you waive your

12   Indictment, you give up the chance that the grand jury

13   would not return an Indictment.  Do you understand

14   that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Okay.  And based on my explanation

17   but, more importantly, your discussion with

18   Mr. Calcagni, is it still your decision that you wish

19   to give up your right to be indicted by a grand jury in

20   this case?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Okay.  And apart from the plea

23   agreement, did anyone make any threats or promises to

24   induce you to waive your right to Indictment by the

25   grand jury?

1    THE DEFENDANT:  No.

2    THE COURT:  Okay.  So I find your waiver of

3    right to Indictment by grand jury is made voluntarily

4    and knowingly.  I have the waiver form, and I accept

5    the written waiver, and I will sign it and enter it

6    into the case file.

7    I understand that you entered into a plea

8    agreement with the Government which states your intent

9    to pled guilty; is that correct?

10    THE DEFENDANT:  Yes, your Honor.

11    THE COURT:  So we're now going to proceed to the

12    change of plea, and I believe that Ms. Potter will

13    swear you in.  Okay?  So this is done under oath.  Do

14    you understand that, Mr. Butziger?

15    THE DEFENDANT:  Yes.

16    THE COURT:  Do you have any questions?

17    THE DEFENDANT:  No, I do not.

18    THE COURT:  Okay.

19    (Defendant sworn)

20    THE CLERK:  Please state your name and spell

21    your last name for the record.

22    THE DEFENDANT:  David Butziger, B-U-T-Z-I-G-E-R.

23    THE COURT:  Mr. Butziger, you are now under

24    oath.  Do you understand what that means?

25    THE DEFENDANT:  Yes, I do, your Honor.

1      THE COURT:  Okay.  And so in a simple, you know,

2  form, it means that anything that you say from this

3  point forward is something that you're swearing to the

4  truth of.

5      And so when you do that, if you are later found

6  to be -- to have been lying, then you could be charged

7  with a separate crime for a false statement or perjury.

8  Do you understand that?

9      THE DEFENDANT:  Yes, your Honor.

10      THE COURT:  Okay.  You understand that the

11  charge against you as I just went over it is the one

12  charge that the Government is presenting; correct?

13      THE DEFENDANT:  Yes.

14      THE COURT:  Okay.  And -- I'm sorry.  Okay.  And

15  you have certain obligations under the plea agreement

16  which your attorney has -- has your attorney gone over

17  this with you, the plea agreement in this case?

18      Again, I'm going to hold it up to the camera so

19  you can see it.

20      THE DEFENDANT:  Yes.  Yes, he has.

21      THE COURT:  It's multiple pages, but it appears

22  to have your signature at the end.  Do you understand

23  that?

24      THE DEFENDANT:  Yes, I do, your Honor.

25      THE COURT:  And is that the document that you

1    went over and discussed with your attorney?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Okay.  And you have some obligations

4    under this agreement as does the Government.  Did

5    Mr. Calcagni discuss that with you?

6         THE DEFENDANT:  Yes, he did, your Honor.

7         THE COURT:  Okay.  And so you already did the

8    first thing, which is waiving or giving up your right

9    to presentation of this case to the grand jury and

10   agreeing to the filing of the one-count Information

11   which charges you under 18 U.S.C. Section 1349 with

12   conspiracy to commit bank fraud.  Okay?

13        And then the second part of that is that you're

14   agreeing to plead guilty to that charge.  Do you

15   understand that?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Okay.  And I'm going to ask the

18   Government -- do you understand what it means to give

19   up the -- to plead guilty to a charge?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Okay.  Has anybody threatened you in

22   any way or made any promises that are not contained in

23   this to get you to plead guilty to this charge?

24        THE DEFENDANT:  No.

25        THE COURT:  Okay.  So by pleading guilty to this

1  charge, do you -- let me go back.  How old are you,

2  Mr. Butziger?

3          THE DEFENDANT:  Fifty-two.

4          THE COURT:  And how far did you go in school?

5          THE DEFENDANT:  Some college.

6          THE COURT:  Okay.  Have you been treated

7  recently for any mental illness or addiction to

8  narcotic drugs?

9          THE DEFENDANT:  No.

10          THE COURT:  And are you currently under the

11  influence of any drugs or alcohol of any kind?

12          THE DEFENDANT:  No, I'm not.

13          THE COURT:  And do you feel that you understand

14  the charge and the nature of the charge that the

15  Government has brought against you?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Was Mr. Calcagni able to answer any

18  questions that you had and address any concerns that

19  you had?

20          THE DEFENDANT:  Yes, thoroughly.

21          THE COURT:  And are you fully satisfied with the

22  representation that Mr. Calcagni has provided in this

23  case?

24          THE DEFENDANT:  Absolutely.

25          THE COURT:  Okay.  So is it your decision to

1       plead guilty because you think that is in your best

2       interest?

3               THE DEFENDANT:  Yes, your Honor.

4               THE COURT:  Okay.  Mr. Vilker, what are the

5       maximum penalties in this case?  You're muted,

6       Mr. Vilker.

7               MR. VILKER:  Sorry about that, your Honor.

8               THE COURT:  That's okay.

9               MR. VILKER:  The maximum penalties for the one

10      count of conspiracy to commit bank fraud are 30 years'

11      imprisonment, five years of supervised release, a

12      $1 million fine and a $100 special assessment.

13              THE COURT:  Okay.  Do you understand that,

14      Mr. Butziger, those are the maximum penalties that the

15      Court could impose in sentencing you on this charge?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  And you discussed that with your

18      attorney as well?

19              THE DEFENDANT:  Yes, I did.

20              THE COURT:  Okay.  And did you talk to

21      Mr. Calcagni about the Federal Sentencing Guidelines

22      generally, how they work and how the Court goes about

23      determining a sentence in any given case?

24              THE DEFENDANT:  Yes, I have.

25              THE COURT:  Okay.  I want you to -- I'm going to

1    ask Mr. Vilker to place the facts that the Government

2    would prove on the record, and I'm going to ask you to

3    listen very carefully because at the end I'm going to

4    ask if you agree and admit to those facts.  Okay?

5            THE DEFENDANT:  Okay.

6            MR. VILKER:  Thank you, your Honor.  This

7    Defendant, David Butziger, and his co-conspirator,

8    David Staveley, conspired to defraud Bank Newport and

9    the Small Business Administration by submitting false

10   and fraudulent loan applications under the federal

11   Paycheck Protection Program, which is known as the PPP.

12           The PPP was enacted by Congress in March of this

13   year as part of the Coronavirus Aid, Relief and

14   Economic Security Act designed to provide emergency

15   financial assistance to millions of Americans who are

16   suffering the economic effects caused by the COVID-19

17   pandemic.

18           The PPP program authorized billions of dollars

19   in forgivable loans, that is, loans that would be

20   repaid to the banks by the Government instead of being

21   repaid by the borrower, to small businesses for the

22   purposes of job retention.

23           Mr. Butziger and Mr. Staveley conspired to

24   submit four different PPP loan applications to Bank

25   Newport in April of 2020.  In each of these

1    applications, Mr. Butziger and Mr. Staveley falsely

2    represented that different businesses had significant

3    numbers of employees and large monthly payrolls when

4    they did not.

5          First, on or about April 6th of 2020,

6    Mr. Staveley, in the name of his brother, Greg Sanborn,

7    submitted a loan application under the PPP to Bank

8    Newport on behalf of Oakland Beach Restaurant Group

9    LLC, doing business as Top of the Bay.

10         The loan application was in the amount of

11   $185,750 and fraudulently represented that Oakland

12   Beach Restaurant Group had 26 employees and an average

13   monthly payroll of $53,000 at the Top of the Bay

14   restaurant in Warwick.

15         In truth, although Mr. Staveley had been in

16   negotiations to purchase the Top of the Bay restaurant,

17   he never did so and he had no -- neither he nor

18   Mr. Butziger had any employees there or any payroll

19   whatsoever.

20         On or about April 14th of 2020, Mr. Staveley

21   submitted to Bank Newport an IRS Form 941 in support of

22   the PPP application of Oakland Beach Restaurant Group.

23   That form fraudulently listed wages for Oakland Beach

24   Restaurant Group to be $158,723.52 for the first

25   quarter of 2020 when, in truth and in fact, no wages

1    were paid whatsoever in this period.

2           Mr. Butziger knowingly created this false and

3    fraudulent 941 form that Mr. Staveley then submitted to

4    Bank Newport.

5           On April 6th, 2020, Mr. Staveley, in the name of

6    his brother, Greg Sanborn, submitted a loan application

7    under the PPP to Bank Newport on behalf of Apponaug

8    Restaurant Group LLC, doing business as Remington

9    House.

10          The loan application was in the amount of

11   $144,050 and fraudulently represented that Apponaug

12   Restaurant Group LLC had 18 employees and an average

13   monthly payroll of $46,000 at the Remington House

14   restaurant in Warwick.

15          In truth and in fact, the Remington House

16   restaurant had been closed since November of 2018 and

17   Apponaug Restaurant Group LLC had no employees

18   whatsoever.

19          On April 10th of 2020, Mr. Staveley submitted to

20   Bank Newport a 941 form in support of a PPP application

21   for Apponaug Restaurant Group.  That form fraudulently

22   listed the wages for Apponaug Restaurant Group LLC to

23   be $138,000 for the first quarter of 2020 when, in

24   truth, no wages were paid whatsoever in this period.

25          Mr. Butziger knowingly created this false and

1    fraudulent 941 form, and Mr. Staveley submitted it to

2    Bank Newport.

3         Also on October -- excuse me, also on or about

4    April 6th of 2020, this Defendant, David Butziger,

5    submitted a loan application under the PPP to Bank

6    Newport in his own name on behalf of an unincorporated

7    entity that he called Dock Wireless.

8         That loan application was in the amount of

9    $105,381.50 and fraudulently represented that Dock

10   Wireless had seven employees and an average monthly

11   payroll of $42,152.50.  In truth and in fact, Dock

12   Wireless had no employees whatsoever and no wages were

13   paid by Dock Wireless.

14        On April 13th, 2020, this Defendant, David

15   Butziger, submitted to Bank Newport an IRS Form 941 in

16   support of his PPP application for Dock Wireless.  That

17   form fraudulently provided that Dock Wireless had paid

18   six employees a total of $126,500 during the first

19   quarter of 2020 when, in truth and in fact, no wages

20   were paid.

21        Finally, on April 6th of 2020, Mr. Staveley, in

22   the name of his brother, Greg Sanborn, submitted a loan

23   application under the PPP to Bank Newport on behalf of

24   New Flat Penny LLC, doing business as On the Trax,

25   which was a restaurant that was operating in Berlin,

1    Massachusetts.

2        The loan application was in the amount of

3    $108,777.50 and fraudulently represented that New Flat

4    Penny LLC had 22 employees and an average monthly

5    payroll of $36,000.  In truth and in fact, although New

6    Flat Penny did own and operate the On the Trax

7    restaurant in 2019 and the beginning of 2020, the On

8    the Trax restaurant was closed permanently on or about

9    March 10th, 2020, after its liquor license was revoked.

10   New Flat Penny LLC had no employees at all when the PPP

11   application was submitted.

12       Those are the facts of the case, your Honor.

13       THE COURT:  Okay.  Thank you, Mr. Vilker.

14       Mr. Butziger, did you hear everything that

15   Mr. Vilker just put on the record?

16       THE DEFENDANT:  Yes, I did.

17       THE COURT:  And did you understand everything

18   that he said?

19       THE DEFENDANT:  I did.

20       THE COURT:  Okay.  You did or you did not?

21       THE DEFENDANT:  Yes, I did.

22       THE COURT:  Oh, okay.  Before I ask you for your

23   plea, there's a couple more things we need to go over

24   with you.

25       First, I'm going to go through the rights that

1    you as a Defendant have, and I want to make sure that

2    you understand those rights because you're giving them

3    up when you plead guilty.  Okay?

4              THE DEFENDANT:  Yes.

5              THE COURT:  So if you have any questions or

6    don't understand something, please let me know.  This

7    is important.  Okay?  All right.

8              You have the right to plead not guilty and

9    persist in that plea to trial.  You have the right to a

10   trial before a jury or by a judge sitting without a

11   jury if you chose to do that.  Do you understand that?

12             THE DEFENDANT:  Yes, I do, your Honor.

13             THE COURT:  Okay.  At trial you'd be presumed

14   innocent of the charges against you; and the

15   Government, Mr. Vilker, would be required to prove your

16   guilt by a standard that we call proof beyond a

17   reasonable doubt, which is a fairly high standard.  Do

18   you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Okay.  At the trial you'd have the

21   right to be represented by counsel.  Mr. Calcagni would

22   be there, and you would have the right to see and hear

23   all of the witnesses who would testify against you and

24   have them cross-examined by your attorney.  Do you

25   understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, at a trial you'd also have the

3     right to testify on your own behalf or -- if you wanted

4     to do that or to not testify, and the fact that you

5     chose not to testify could never be used against you.

6     Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  You'd also have the right to call

9     witnesses, use the power of the Court to obtain

10    documents or other items to present in your defense;

11    and by pleading guilty, entering a plea of guilty in

12    this case, you're giving up all of those rights.  Do

13    you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you have any questions about

16    those rights?

17         THE DEFENDANT:  No, I do not.

18         THE COURT:  Okay.  One of the things that I did

19    not ask you or did not tell you is that when you plead

20    guilty to a felony case in Federal Court, you could

21    have potential immigration consequences if you're not a

22    citizen of the United States.

23         Have you discussed any of that with

24    Mr. Calcagni, and do you have any concerns about that

25    at this time?

1      THE DEFENDANT:  I have discussed it, and I have

2  no concerns.

3      THE COURT:  Okay.  The Federal Sentencing

4  Guidelines are something that the Court uses to begin

5  its analysis to determine sentencing.  Have you

6  discussed that with Mr. Calcagni?

7      THE DEFENDANT:  Yes, your Honor.

8      THE COURT:  Okay.  So they are advisory, which

9  means that they make recommendations that the Court

10  needs to consult, but they're not mandatory.  So the

11  Court doesn't have to follow them exactly.  Do you

12  understand that?

13      THE DEFENDANT:  Yes, your Honor.

14      THE COURT:  Okay.  That means I'm required to

15  give them some consideration, and that means that the

16  sentence that you receive could be within those

17  guidelines or it could be higher or lower.  Do you

18  understand that?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  Okay.  If the sentence is higher

21  than you thought it was going to be or higher than the

22  guideline range that you expected, you can't take back

23  your plea of guilty once you enter it today.  Do you

24  understand that?

25      THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Okay.  And in this case we don't

2     know the guideline range.  I'm sure Mr. Calcagni has

3     given you an estimate, but probation will go through a

4     presentencing process and do an analysis of your

5     guidelines which Mr. Calcagni and the Government will

6     have an opportunity to review and determine if they

7     agree with and object to; but the Court ultimately

8     decides what guidelines are appropriate in your case.

9     Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Okay.  Now, in some circumstances

12     the Government or you can appeal a sentence that's

13     given.  In this case, in your plea agreement you've

14     given up your right or waived your right to appeal the

15     sentence if it's within or below the guideline range,

16     whatever that is.  Do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Okay.  Is there anything else

19     that -- anything else from the Government?

20          MR. VILKER:  I didn't think that Mr. Butziger --

21     I wasn't sure that he actually admitted the facts.  I

22     knew you would get to that.

23          THE COURT:  Because I did it backwards,

24     Mr. Vilker.  That's my apology.  We will get to that.

25          Mr. Butziger, so a couple minutes ago Mr. Vilker

1    went through a rendition of the facts for the record in
2    this case, and you acknowledged that you had heard them
3    and understood them.

4         Do you agree and admit that those are the facts
5    that the Government could prove if this case were to go
6    to trial?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Okay.  How do you wish to plead to
9    the charge against you in this case, guilty or not
10   guilty?

11        THE DEFENDANT:  Guilty, your Honor.

12        THE COURT:  Okay.  It's the finding of this
13   Court in the case of the United States versus Butziger
14   that the Defendant is fully competent and capable of
15   entering an informed plea and that he is aware of the
16   nature of the charges against him and the consequences
17   of his plea.

18        His plea of guilty is knowing and voluntary and
19   supported by an independent basis in fact containing
20   each of the essential elements of the plea -- of the
21   offense.  His plea is, therefore, accepted; and he's
22   hereby adjudged guilty of that offense.

23        We're going to schedule sentencing for
24   December 18th at --

25        THE CLERK:  10 a.m.

1        THE COURT:  -- 10 a.m.  And between now and

2   then, Mr. Butziger, you will have an opportunity to

3   speak with probation, to review their probation --

4   probation's sentencing report and to discuss it with

5   your attorney.

6        I wish I could tell you that we would either be

7   in person or on Zoom, but I just don't know at this

8   time.  Okay?  So we'll figure it out between now and

9   then.

10       There's no change in bail status, I'm assuming.

11  Correct?

12       MR. VILKER:  That's correct, your Honor.

13       THE COURT:  Okay.  So I wish you well.  Stay

14  well, everyone, stay healthy, and we will see you one

15  way or another somewhere around December 18th.

16       Is there anything else, Mr. Calcagni?

17       MR. CALCAGNI:  No, your Honor.  Thank you very

18  much.

19       THE COURT:  Thank you.  Okay.

20       (Adjourned)

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4            I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5      hereby certify that the foregoing pages are a true and

6      accurate transcription of my stenographic notes in the

7      above-entitled case.

8

9            May 23, 2022

10      Date

11

12

13      /s/ Karen M. Wischnowsky_____

14      Karen M. Wischnowsky, RPR-RMR-CRR
        Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25